**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Efren Medina,<br><br>　　　　　　　Petitioner,<br><br>v.<br><br>David Shinn, et al.,<br><br>　　　　　　　Respondents. | No. CV-21-00889-PHX-GMS<br><br>**ORDER**<br><br><u>DEATH-PENALTY CASE</u> |

　　　　Pending before the Court is Respondents' motion to bar Petitioner Efren Medina's defense team from directly approaching the victims in this case. (Doc. 10 at 1, 6.) Medina opposed the motion. (Doc. 11). At oral argument, at the request of the Court, were Ms. Bocks from the Arizona Attorney General's Office of Victim Services as well as Colleen Clase from the Arizona Voice for Crime Victims—a non-profit private entity that represents victims of crime in state and federal court proceedings.

　　　　At oral argument, Respondents did not aggressively assert that they had standing to enforce the Crime Victims' Rights Act of 2004. Rather, they proposed that the Court had the authority to enforce the Act on its own, and that, in doing so, it should prevent direct victim contact by the Petitioner. Petitioner represented to the Court that he does not yet know whether he intends to attempt to contact the victims in this case, but indicated his concern was that, when the Attorney General's Office coordinated victim contact, it routinely arranged for the meeting on its own premises, which may not be a preferred environment for such consultation. The Court proposed, and the parties approved, the

following: If Petitioner determines that he desires to contact either of the decedent's two living adult daughters—which pursuant to the definitions in the Crime Victims' Rights Act of 2004 are the only persons the parties could identify as victims—then the counsel for Petitioner will file notice with the Court. The notice filed by Petitioner should propose the text of the communication to be sent to the victims either by mail or e-mail. If Respondents oppose the proposed text in any particular manner, they may respond; the Court, in turn, may set oral argument.

For the following reasons, the Court orders this approved procedure and denies the motion.

## I. Background.

Medina stands convicted of first-degree murder, third-degree burglary, and aggravated robbery in state court. *State v. Medina* (*Medina I*), 193 Ariz. 504, 509 ¶¶ 3, 8, 975 P.2d 94, 99 (1999). The trial court sentenced him to death for the murder and to prison for the other crimes. *Id.* at 509 ¶ 8, 517 ¶ 59, 975 P.2d at 99, 107. Although the court vacated his death sentence as post-conviction relief, a jury resentenced him to death. *State v. Medina* (*Medina II*), 232 Ariz. 391, 398 ¶¶ 1–2, 414 ¶ 116, 306 P.3d 48, 55, 71 (2013). This death sentence, unlike the first one, withstood post-conviction review. *Id.* at 399 ¶ 10, 414 ¶ 116, 306 P.3d at 56, 71. After this round of review closed, Medina filed his intent to seek habeas relief from this Court. (Doc. 1.) This Court appointed him counsel and ordered him to petition for such relief by April 12, 2022. (Doc. 5 at 1; Doc. 9 at 2.) In light of the coming petition, Respondents filed this motion. (Doc. 10.)

## II. Discussion.

Respondents argue that the Court should grant their motion under the Crime Victims' Rights Act of 2004 (CVRA).[1] (Doc. 10 at 1–3.) The CVRA defines victims in

---

[1] Respondents also argue that the Court should grant their motion under Ariz. Rev. Stat. § 13-4433(B) of Arizona's Victims' Rights Implementation Act (Doc. 10 at 1–5) and Article 2, Section 2.1(A)(5) of Arizona's Constitution (*id.* at 1–2, 4). The former bars defense teams from asking the victims themselves to interview them, Ariz. Rev. Stat. § 13-4433(B), but the latter does not, Ariz. Const. Art. 2, § 2.1(A)(5) (granting victims the right

federal habeas proceedings arising from a state conviction as a "family member or other lawful representative" of the person killed by the one who committed the state offense.[2] 18 U.S.C. § 3771(b)(2)(D). Pertinent here, the CVRA grants such victims the rights to be treated fairly "and with respect for [their] dignity and privacy." *Id.* § 3771(a)(8), (b)(2).

Respondents, however, lack standing to enforce these rights. *Burns*, 2021 WL 5280601, at *1. The CVRA grants standing, in general, to the government to enforce victims' rights. 18 U.S.C. § 3771(d)(1). But it grants such standing in the proceedings here to just "the crime victim or the crime victim's lawful representative." 18 U.S.C. § 3771(b)(2)(B)(i); *see Burns*, 2021 WL 5280601, at *1; *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general."). Besides, the CVRA refers to "the government" as only "[o]fficers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime." 18 U.S.C. § 3771(c)(1). It omits all state employees and agencies. *Id.*; *see also*

---

to refuse any discovery request from defense teams). In any case, Respondents lack standing to enforce Ariz. Rev. Stat. § 13-4433(B) under Arizona Rule of Criminal Procedure 39(d)(2). This rule gives prosecutors that standing only in criminal proceedings *and* on a victim's request—neither of which apply here. (*See* Doc. 10 (noting no such requests)); *Broader v. Dir., Dep't of Corrs. of Ill.*, 434 U.S. 257, 269 (1978) ("It is well settled that habeas corpus is a civil proceeding."); *see also Burns v. Shinn*, No. CV-21-1173-PHX-SPL, 2021 WL 5280601, at *2 (D. Ariz. Nov. 12, 2021) (holding that respondents lacked standing to enforce Ariz. Rev. Stat. § 13-4433(B) under Rule 39(d)(2)).

In fact, Arizona's legislature intended to omit Ariz. Rev. Stat. § 13-4433(B) from federal habeas proceedings. *See Reeves v. Shinn*, No. CV-21-1183-PHX-DWL, 2021 WL 5771151, at *5 (D. Ariz. Dec. 6, 2021) (suggesting that the statute no longer applies post-state court); *Burns*, 2021 WL 5280601, at *2–4 (explaining that the text of Ariz. Rev. Stat. § 13-4433(B)'s neighboring statutes reflects the legislature's intent to omit Ariz. Rev. Stat. § 13-4433(B) from federal habeas proceedings). Respondents' claims as to Arizona law thus lack merit.

[2] Because the CVRA limits the meaning of "victim" in these proceedings, the meaning of "victim" under Ariz. Rev. Stat. § 13-4401(19) does not apply. (Doc. 10 at 6); *see Sola Elec. Co. v. Jefferson Elec. Co.*, 317 U.S. 173, 176 (1942) ("To the federal statute and policy, conflicting state law and policy must yield." (citing U.S. Const. Art. VI, cl. 2)); *see also Awotin v. Atlas Exch. Nat. Bank*, 295 U.S. 209 (1935); *Deitrick v. Greaney*, 309 U.S. 190, 200–201 (1940).

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S.Ct. 2367, 2381 (2020) ("It is a fundamental principle of statutory interpretation that" courts cannot provide "absent provision[s]."). In short, Respondents lack standing to enforce § 3771(a)(8).

But their lack of standing does not prohibit the Court from considering whether to require Medina's defense team to channel its request to interview the victims in this case through Respondents' counsel. For the Court has the duty to "ensure that . . . crime victim[s are] afforded" their rights under 18 U.S.C. § 3771(a)(8). *Id.* § 3771(b)(1). "The Court takes this duty seriously." *Reeves*, 2021 WL 5771151, at *5 (finding that "standing does not serve as an obstacle to the issuance of" such an order based on that duty).

That said, the Court finds that § 3771(a)(8) does not demand that Medina's defense team channel its victim-interview requests through Respondents' counsel. Section 3771(a)(8) does not expressly bar defense teams from asking the victims themselves to speak with them. *See* 18 U.S.C. § 3771(a)(8); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)) (stating that a "statute's carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly'").

Nonetheless, the "broad language" of § 3771(a)(8) seeks "to promote a liberal reading of the statute in favor of interpretations that promote victims' interest in fairness, respect, and dignity." *United States v. Turner*, 367 F. Supp. 2d 319, 335 (E.D.N.Y. 2005). "The legislative history is clear": "[T]hese rights . . . are intended to be expansive, enforceable, and not merely symbolic." Sen. Jon Kyl et al., *On the Wings of Their Angels: The Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act*, 9 Lewis & Clark L. Rev. 581, 613 (2005); *see also* 150 Cong. Rec. S10911 (daily ed. Oct. 9, 2004) (deeming § 3771(a) rights "broad rights").

For this reason, Respondents argue that barring Medina's defense team from asking the victims themselves to speak with them will "advance[] Congress'[s] intent" of § 3771(a)(1) by furthering § 3771(a)(8). (Doc. 10 at 3.) Judges of this Court have agreed

- 4 -

with this position. *See, e.g.*, *Reeves*, 2021 WL 5771151, at *4–6. Other Judges of this Court, however, have held that 18 U.S.C. § 3771 does not demand such a bar. *See, e.g.*, *Burns*, 2021 WL 5280601, at *4–5 (rejecting "[r]espondents' position that all contact with surviving victims is *per se* disrespectful and violative of [their] privacy and dignity").

Here, at oral argument, the parties reached a compromise: Medina's defense team may mail a victim in this case a letter or an e-mail asking to interview him or her. If the team plans to do so, Medina's counsel must file a notice of that plan with the Court before the letter is mailed. The Court requires the notice filed by Petitioner to propose the text of the communication with the victim. The text must identify the author as part of Medina's defense team in these proceedings and the author's role in that team. The text must also state that the victim has the right to deny the interview request. If Respondents oppose the proposed text, they may respond; the Court, in turn, may set oral argument.[3]

The Court finds—and the parties implicitly agree—that this plan furthers § 3771(a)(8). It bars any member of the defense team from meeting a victim at his or her house "years or decades after the victim's loss of [his or her] loved one" and asking "about this traumatic loss," *see Reeves*, 2021 WL 5771151, at *6 (voicing such a concern in granting the motion similar to Respondents'), without prior approval of the victim. It also resolves the concerns of the Arizona Attorney General's Office of Victims Services and the Arizona Voice for Crime Victims by having the letter's author identify him or herself as part of Medina's defense team in these proceedings and his or her role in that team. Moreover, it informs the victims that they have the right to decline the interview request. This plan will also give each victim the time to process the request, which should produce an informed, thoughtful answer. At the same time, it will avoid placing undue pressure on the victim. The agreed upon course of action therefore respects the victims' right to have

---

[3] By approving this procedure, Medina does not assert in this case that the defense team will suffer any unconstitutional prior restraint of its First Amendment rights or thwart any of its investigation. (Doc. 11 at 8–9.) The Court also finds, based on Respondents' approval, that Respondents' reliance on *Cullen v. Pinholster*, 563 U.S. 170, 184–85 (2011), is moot. (Doc. 10 at 6.)

their dignity and privacy respected. At the same time, it allows the Petitioner to directly contact the victim and follow-up with him or her if the victim is willing to speak to the Petitioner.

The Court determined that a similar procedure in *Burns* furthered those rights. In that case, the Court found that, as opposed to visiting a victim's home unannounced, sending a letter to the victim requesting an interview and obeying the victim's refusal of the request furthers 18 U.S.C. § 3771(a)(8). *Burns*, 2021 WL 5280601, at *5 (citing Doc. 12).

In addition, the Court directs Medina's counsel to make reasonable efforts to determine whether an attorney represents a victim of interest. If an attorney represents the victim, Medina's defense team shall channel its request to interview through that counsel. To conclude, in exercising its duty to ensure that the victims in this case are afforded their rights, the Court finds that this course of action furthers their rights under 18 U.S.C. § 3771(a)(8) to be treated fairly "and with respect for [their] dignity and privacy," without unduly burdening Petitioner in the potential preparation of his case.

Accordingly,

**IT IS ORDERED** denying Respondents' Motion to Preclude Victim Contact (Doc. 10).

**IT IS FURTHER ORDERED** that if Medina's defense team wants to interview a victim in this case, a member (or members) of the team may only mail a victim in this case a letter or an email asking to interview him or her.

**IT IS FURTHER ORDERED** that if the defense team plans to mail that letter, the team must first make reasonable efforts to determine whether an attorney represents a victim of interest.

**IT IS FURTHER ORDERED** that if the defense team learns that an attorney represents a victim of interest, the team shall channel its request to interview him or her through that attorney.

**IT IS FURTHER ORDERED** that if an attorney does not represent a victim of

interest, Medina's counsel must file a notice of the defense team's plan to send the interview-request letter with the Court. The notice must propose the text of the correspondence. The text must identify the author as part of Medina's defense team in these proceedings and the author's role in that team. The text must also state that the victim has the right under Ariz. Rev. Stat. § 13-4433(H) to deny the interview request.

**IT IS FURTHER ORDERED** that if Respondents oppose the letter's proposed text, they shall file a response within seven days from receipt of Medina's counsel's notice. Medina shall file a reply within three days from receipt of Respondents' response.

Dated this 2nd day of February, 2022.

_____
G. Murray Snow
Chief United States District Judge