**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Efren Medina, | No. CV-21-00889-PHX-GMS |
| Petitioner, | <u>DEATH PENALTY CASE</u> |
| v. | **ORDER** |
| Ryan Thornell, et al., | |
| Respondents. | |

Pending before the Court is Petitioner Efren Medina's Motion to Stay Proceedings Pursuant to *Rhines v. Weber,* (Doc. 72), his Motion to Amend/Correct his Petition (Doc. 82) and his request that this Court authorize habeas counsel to represent him in state court. (Doc. 74.) For the reasons below, the Court grants these three motions.

### I. BACKGROUND

In May 2021, Mr. Medina commenced this habeas case, after being sentenced to death and having brought an unsuccessful Petition for Post-Conviction Relief (PCR Petition) in Arizona Courts. This Court appointed the Arizona Federal Public Defender's Office (FPD) to represent Medina in federal court. (Doc. 1; Doc. 5 at 1.) The Court barred the FPD from representing Medina "in state forums or prepare any state court pleadings" absent its express authorization. (Doc. 5 at 1.) In November 2022, Medina filed the Petition.[1] (Doc. 33.)

A year and a half later, in summer 2024 Medina received previously undisclosed

---

[1] He filed his initial habeas petition seven months earlier. (Doc. 27.)

records from the Maricopa County Attorney's Office (MCAO). (Doc. 82 at 2.) The documents included an undated memo request from the initial prosecutor on the case, Alex Poulous, to his supervisor, K.C. Scull. The memo requested authorization to offer immunity to Co-Defendant Martinez – the teenager who had accompanied Petitioner Medina and his Co-Defendant Aro on the night of the murder--in return for Martinez's truthful testimony. (*Id*.; Doc. 82-1 at 2.)

Poulos's memo to his supervisor summarizes a version of facts purportedly coming from Calderon, Petitioner's then girlfriend, that is at least possibly different in a significant way from what Calderon says in every other known interview or any of the other multiple occasions upon which she testified.[2]

Starting from her initial interview with the police, Calderon recounted with a few variations that late on the night of the murder, Medina, Aro and Martinez came over to her house and were laughing. When she asked them why they were laughing Medina and Aro "would hold their hands out simulating driving a car and make noises like driving over a speed bump.[3] Medina told her to watch the news tomorrow and you'll figure it out." (*Id.* at 13, 23-26, 45). When she went over to Medina's house the next day, Medina told her what happened, including the attempted robbery and murder of the victim by driving a car over him. Medina purportedly further told Calderon that he had been the driver when they had driven over the victim twice. (*Id.* at 13-14, 32-34, 46-48).

In the more recently released memo from Poulus to Skull, however, Poulus described Calderon as relating that on the night of the murder, "both Medina and Aro boasted about having hit the victim with the car; . . . [but] she believed that Medina actually ran over the victim, because he talked more about it; however, she confirmed that both

---

[2] Calderon gave a partially-recorded interview on October 7, 1993 to Detective Norman, about which he subsequently wrote a report. She was again interviewed by Prosecutors Poulos, Jim Logan and Medina's counsel Tim Agan on May 19, 1994. Thereafter, she testified three times: 1) during the original guilt phase, 2) the 2008 penalty trial in which the jury did not reach a verdict, and 3) the 2009 penalty phase.

[3] In her Tr. 3/8/95 at 63 (date) Ex. 5 at 30, she testified that Aro was not laughing; she nevertheless testified that he held out his hands simulating driving a car and made noises like driving over a speed bump.

Medina and Aro boasted about having done it" (Doc. 82-1 at 2.) In that same memo, in separately summarizing the evidence against both Medina and Aro, the prosecutor repeats that "Medina admitted to his girlfriend that he drove over [the victim] with his car," but he also states that "[Aro] told Medina's girlfriend, in Medina's presence, that he (Aro) drove over the victim with the car." (*Id.*)

The prosecutor's summary of Calderon's statement suggests a possible admission by Aro, or a discrepancy in Calderon's account, that has not been previously disclosed or recorded in which Aro specifies he was the driver of the car as opposed to merely a passenger in it when the car drove over the victim. In light of this, Medina moves to amend his habeas petition to supplement two claims (Claims VII(B) and claim VIII(A)) and to add a twelfth (Claim XII). He further seeks to stay proceedings pursuant to *Rhines v. Weber.* (Doc. 72) while he exhausts the amended claims in state court.

## II.    Applicable Law

A habeas petition may be amended and supplemented under Rule 15 of the Federal Rules of Civil Procedure. *James v. Pliler*, 269 F.3d 1124, 1126 (9th Cir. 2001) (amendment); *see, e.g.*, *Chargualaf v. Zuniga*, No. 1:15-cv-00462-LJO-SAB (HC), 2015 WL 3624112, at *1 (E.D. Cal. June 9, 2015) (supplement); *see also* 28 U.S.C. § 2242; Rule 12, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. Rule 15(a)(2), in pertinent part, allows a party to amend his pleading with leave of court. Fed. R. Civ. P. 15(a)(2). A court should "freely give leave when justice so requires." And under Rule 15(d), a court may grant a party leave "on just terms," to supplement a pleading with a new claim that arose after the original pleading was filed. *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010). Leave to amend, however can be denied when the proposed amendment is frivolous, futile or legally insufficient. *Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir. 1995).

Under *Rhines*, a federal court may stay a habeas case in which the operative petition contains both exhausted and unexhausted claims, while the petitioner exhausts his unexhausted claims in state court, before returning to the federal court for review of the

fully exhausted petition. *Id.* at 271–79. A *Rhines* stay is proper only if the petitioner shows (1) "good cause" for the failure to exhaust, (2) the unexhausted claim is "potentially meritorious," and (3) the petitioner did not "intentionally" use "dilatory litigation tactics." *Id.* at 277–78.

### III. Analysis

#### A. Amendment to the Petition.

To prevail on his new *Brady* claim, (Claim XII) Petitioner must plausibly allege: (1) information that is favorable to him; (2) which the government failed to disclose to him, either willfully or inadvertently; and (3) resulting prejudice. *United States v. Wilkes,* 662 F.3d 524, 535 (9th Cir. 2011).[4]

Respondents argue that the content of the Poulus memo is neither material, exculpatory nor prejudicial. As the Respondents point out, the Poulus memo is not itself, nor does it contain, admissible evidence.[5] *Spaziano v. Singletary,* 36 F.3d 1028, 1044 (11th Cir. 1994) ("A reasonable probability of a different result is possible only if the suppressed information is itself admissible evidence or would have led to admissible evidence. Otherwise, the suppression of the information could not have affected the basis of the verdict, which is the evidence the factfinder heard.").

Yet, while the Poulus memo is not itself admissible, information within it presents the potential of leading to admissible evidence—that Aro also confessed to being the driver. *United States v. Olsen,* 704 F.3d 1172, 1184 (9th Cir. 2013) ("[i]nadmissable evidence that could have led to the discovery of admissible evidence also may qualify as material under *Brady.*"). That information may also be sufficient to provide an additional

---

[4] To the extent that Poulus's memo suggests the possibility that the prosecutors were aware that Calderon had previously indicated that Aro had also confessed to being the actual driver, it is conceivable that a *Napue* claim also may exist. "[T]he knowing presentation of false testimony by the prosecution –is material and requires setting aside a conviction if there is 'any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Clements v. Madden,* 112 F.4th 792, 800 (9th Cir. 2024).

[5] The Court does not understand Petitioner's argument to be that the Respondent had any obligation to disclose its legal theories, strategies or work product to the Defendant. Nevertheless, to the extent that the Poulus memo contains such material, it was apparently voluntarily turned over to the Petitioner by the Respondent.

- 4 -

good faith basis for questioning of Calderon and Detective Norman.

Respondent argues that even if the jury had concluded that Medina was not the driver it would have applied statutory aggravators to him in light of the actions he took that he does not contest, e.g. initiating the crime, beating and stomping on the elderly victim, and pulling him from his car and placing him in the street where he would surely be run over. Of course, this argument presupposes that the jury actually did not determine that Medina was the driver, and this we do not know. Perhaps it determined that Medina was the driver, perhaps it determined he was not, and perhaps the jury did not ultimately decide that specific question.

Prejudice results when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Kohring,* 637 F.3d 895, 902 (9th Cir. 2011) (quoting *United States v. Bagley,* 473 U.S. 667, 682(1985)). "A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial." *United States v. Olsen,* 704 F.3d 1172, 1183 (9th Cir. 2013) (quoting *Maxwell v. Roe,* 628 F.3d 486, 509 (9th Cir. 2010*)) see also United States v. Agurs,* 427 U.S. 97, 104 (1976)*.*  While it is possible that this testimony would have had no effect on the jury's verdict, it is also possible that a reasonable jury might have used evidence to which the Poulus memorandum may leave to determine that Medina was not the driver when it had otherwise done so, (especially in light of other testimony to the same effect.) Nor is it possible for the Court to discern the extent to which a determination by the jury that Aro not Medina was the driver, or that Aro was more likely the driver than they had otherwise believed, may have had on the jury's other determinations and the outcome of Medina's verdict. Thus the possibility that the Poulus memorandum can lead to other material prejudicial evidence is sufficient to allow the amendment to add Claim XII at this time.

Petitioner also attempts to supplement Claim VII(B) that the prosecutor committed misconduct by pursuing inconsistent theories at the separate trials of Medina and Aro. As has been detailed in his memorandum, Poulus described Calderon as relating that on the

night of the murder that both Medina and Aro told Calderon that they were the drivers of the car that ran over the victim. Thus, it appears that, if anything, the Poulus memorandum only adds to the basis on which the prosecutor could assert in good faith at the trials of both Medina and Aro that each was the driver of the car. Where two people are both convicted of the same murder, the prosecutor's presentation of supported conflicting evidence in separate trials arising out of the same killing does not violate due process so long as the underlying theory remains the same, the arguments were consistent with the evidence actually introduced at each trial, and the prosecutor did not knowingly use false evidence or act in bad faith. *Nguyen v. Lindsey,* 232 F.3d 1236, 1240-41 (9th Cir. 2000) (holding that "[a]s to who fired the first shot, it is true that the prosecutor made different arguments at each trial, but it is also true that these arguments were consistent with the evidence actually adduced at each trial."); *Haynes v. Cupp,* 827 F.2d 435, 439 (9th Cir. 1987) (holding that individual differences in evidence and emphasis in separate trials does not result in prosecutorial misconduct where the basic theory of the case remained the same throughout.) *But See Thompson v. Calderon,* 120 F.3d 1045, 1058-59 (9th Cir. 1997) *revd. on other grounds,* (holding that "when no new significant evidence comes to light a prosecutor cannot, in order to convict two defendants at separate trials, offer inconsistent theories and facts regarding the same crime.").

Nevertheless, because the Petitioner only recently received the Poulus memorandum and the information it contains, he has not been given an opportunity to determine whether it provides a basis for asserting prosecutorial bad faith in the possible withholding of evidence of a confession by Aro.

The Respondent does assert without much explanation that the issue is procedurally defaulted as having previously been raised and ruled on. Nevertheless, in absence of an explanation why the Poulus memorandum may not provide the Respondent with arguments that he previously could not have known, the Court at this stage, will allow the amendment to Claim VII(B).

As to the supplement to claim VIII(A), Respondent argues the strength of the remaining evidence of the Petitioner's reprehensible conduct demonstrates that he had the required mental state. Respondent further asserts the seemingly circular argument that at any rate the jury unanimously convicted Medina of a premeditated murder and thus no *Enmund/Tison* finding was necessary. Yet, as has already been observed, it is not clear what a jury would have done had it had evidence of a confession by Aro that he was the driver. As such, the Court will also allow the supplement to claim VIII(A) at this early stage. The Court therefore allows Petitioner to amend to add revisions to claims VII(B), VIII(A) and Claim XII to the Amended Petition.

### B. The *Rhines* Stay

The Petitioner did not know of the Poulus memorandum until it was provided to him until just before he filed these motions. He therefore has shown "good cause" for the failure to exhaust. Although the request for a *Rhines* stay was made prior to the motion to amend, it was clear that the request for stay anticipated such a motion which was subsequently filed. The Court has authorized the addition of unexhausted claims and supplements to the Petition. It has done so after finding that some or all of the unexhausted claims may have merit. Nor is there any basis to believe that Petitioner has engaged in dilatory litigation tactics in now seeking the amendment. The Court, therefore, grants the request for the *Rhines* stay. *Gonzalez v. Wong,* 667 F.3d 965, 980 (9th Cir. 2011) (holding that a *Rhines* stay is appropriate where the new material creates "a colorable or potentially meritorious *Brady* claim.")

### IV. AUTHORIZATION MOTION

Medina moves to authorize his habeas counsel to represent him on successive state PCR under the Criminal Justice Act of 1964 (CJA), 18 U.S.C. § 3599(a)(2). (Doc. 74.) The CJA allows the appointment of counsel for "indigent" defendants in federal habeas cases, *Harbison v. Bell*, 556 U.S. 180, 184–85 (2009) (citing 18 U.S.C. § 3599(a)(2) It permits federal habeas counsel to represent a prisoner in "other appropriate motions and procedures." 18 U.S.C. § 3599(e). On a case-by-case basis, a federal court may authorize

- 7 -

habeas counsel to represent a habeas petitioner to exhaust the petitioner's claims in state court. *Harbison*, 556 U.S. at 190 n.7; *see also*, *e.g.*, *Gallegos v. Ryan*, No. CV-01-01909-PHX-NVW, 2017 WL 3822070, at *5 (D. Ariz. July 2017) (stating that, based on *Harbison*, this "Court has the discretion to appoint federal counsel to represent [federal habeas petitioner] in state court").

The Court does so here.

Accordingly,

**IT IS ORDERED** granting Medina's Motion to Amend or Supplement the [Amended] Habeas Petition (Doc. 82).

**IT IS FURTHER ORDERED** granting Medina's Motion to Stay Proceedings Pursuant to *Rhines* (Doc. 72) while it efficiently exhausts the amended claims approved in this Order in state court (supplement to Claims VII(B), VIII(A) and Claim XII).

**IT IS FURTHER ORDERED** granting Medina's Motion for Authorization to Represent Medina in State Court (Doc. 74) in the exhaustion of the above-specified claims added by this Order.

Dated this 20th day of January, 2026.

_____
G. Murray Snow
Senior United States District Judge